THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, complainant-appellant,

*v.*

SARAH CONWAY, defendant-respondent.

---

SARAH CONWAY, individually, and SARAH CONWAY, as executrix of the estate of James F. Conway, deceased, complainants-respondents,

*v.*

THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, defendant-appellant.

[Argued May 20th, 1931.   Decided February 1st, 1932.]

---

*Mr. Arthur T. Vanderbilt,* for the appellant.

*Mr. Albert A. F. McGee,* for the respondents.

The opinion of the court was delivered by

DALY, J.

These appeals bring up decrees of the court of chancery in cross-actions, and were treated by the vice-chancellor, who advised the decrees, in one opinion dispositive of both cases. It is well, because of their close interrelation, first to detail the essential facts and pertinent contentions which preceded the commencement of the two suits.

Elizabeth Clare Hagenbotham gave a $24,000 mortgage, covering property in Atlantic City, to Elizabeth M. Lutz (subsequently married to Randolph Ross). The Automobile Insurance Company of Hartford, Connecticut, insured Mrs. Hagenbotham, as the owner, in an amount not exceeding $19,000, against loss or damage by fire to her property. Attached to the policy was a standard mortgagee clause providing, among other things, that loss or damage, if any, under the policy, should be payable to Elizabeth M. Lutz, as mortgagee, as her interest might appear, and also providing that whenever the company should pay the mortgagee any sum for loss or damage under the policy and should claim that, as to the mortgagor or owner, no liability therefor existed, the company should, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payments should be made, under all securities held as collateral to the mortgage debt, or might at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage with interest, and should thereupon receive a full assignment and transfer of the mortgage and of all such other securities.

Elizabeth Clare Hagenbotham, and her husband, conveyed the premises, subject to the Lutz mortgage, to James F. Conway and Sarah Conway, his wife, as tenants by the entirety. Upon or promptly after this conveyance, an endorsement was

placed on the Automobile Insurance Company's policy in part as follows:

"James F. Conway is hereafter recognized as assured and owner of the property covered under this policy, subject nevertheless to all the terms and conditions herein contained."

Subsequent to the conveyance to James F. Conway and Sarah Conway, his wife, two additional policies of insurance, totaling $27,500, were taken out with the National Liberty Insurance Company of America in the names of both James P. Conway and Sarah Conway, as assured and owners. There was no mortgagee clause attached to either of these policies.

In March, 1927, the insured premises were damaged by fire to the amount of $20,192.90, as estimated by the owner. About four months after the fire, James F. Conway died, leaving a last will and testament, under which Sarah Conway qualified as executrix.

On January 31st, 1928, Mrs. Conway and Elizabeth M. Lutz Ross, as the mortgagee, together instituted an action at law against the automobile insurance company in the supreme court of this state; and on or about the same date Mrs. Conway commenced a suit against the National Liberty company, in the same court. These two suits were removed to the district court of the United States for the district of New Jersey, and both cases were tried before that court in December, 1928. In the action against the automobile insurance company, a verdict was directed in favor of Mrs. Ross, the mortgagee, for $19,000, the amount then due on her mortgage; Mrs. Conway was nonsuited. As to the action against the National Liberty company which was tried about the same time as the action against the automobile insurance company, the jury disagreed, but upon a second trial of the case, Mrs. Conway was given a verdict against the National Liberty company for $20,192.90.

We have not before us any proof of the pleadings or of any of the proceedings or proof in the federal court; there is no proof of any kind in the record sent us which gives any reason or explanation why the nonsuit was entered in the federal

court action; whether it was directed as the result of agreement between the parties or because of failure or inability upon the part of Mrs. Conway to prove that the company was liable to her under its policy.

Whatever caused the nonsuit, it concluded nobody, as a nonsuit in an action at law has no binding effect as res *judicata*. *Penrose* v. *Absecon Land Co., 94 N. J. Eq. 436.* Mrs. Conway took no further action in the federal court to prove her claim against the automobile insurance company and, further, took no action to prove her claim against the automobile insurance company, in any court, within twelve months after the time of the fire, although the policy of insurance provides that—"no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity * * * unless commenced within twelve months next after the fire."

Because of the *pro rata* clause in its policies, the National Liberty company paid Mrs. Conway, not $20,192.90, the amount of the verdict obtained by her against that company, but $11,532.03, in full settlement of the verdict against it; this *pro rata* clause provides that the company shall not be liable for a greater proportion of any loss on the property insured, than the amount of the policy shall bear to the whole insurance, whether valid or not, covering the property. A similar clause is in the policy of the automobile insurance company.

Subsequently, Mrs. Conway made a demand upon the automobile insurance company to pay her $8,250.88, as the *pro rata* amount due from it under its policy. The automobile insurance company refused to make such payment.

About nine months after Mrs. Ross, the mortgagee, obtained the judgment for $19,000 against the automobile insurance company, the company paid her the judgment, with interest and costs; receiving from her a warrant to the clerk of the court authorizing the satisfaction of the same on the record; and, at the same time, under the exercise of its claim to the right of subrogation under the mortgagee clause of the policy, receiving from Mrs. Ross an assignment of her bond

and mortgage. Thereafter the company filed a bill to foreclose the mortgage, which suit is number 12 before us. There is nothing in the bill to show that the bond and mortgage came to the company as a subrogee.

The defendant, Sarah Conway, filed an answer admitting all of the allegations of the bill except that the sum of $19,000 was due on the mortgage as alleged; and filed a counter-claim alleging that she was entitled to an off-set or deduction from the principal sum in the amount of $8,250.88, because that was the amount which the complainant insurance company should contribute to the fire loss, being the difference between such loss and the amount paid her by the National Liberty Insurance Company. Upon motion, Vice-Chancellor Ingersoll struck out the counter-claim on the ground (1) that the amount claimed was unliquidated and (2) that she had already elected her forum.

Mrs. Conway, individually, and as executrix of the estate of James F. Conway, her husband, then filed a bill setting out substantially the same facts as contained in her counter-claim and praying for substantially the same relief. This suit of Mrs. Conway's is number 13 now before us. The defendant in the suit moved to dismiss the bill of complaint.

The record does not disclose that there was any order consolidating the two cases nor any stipulation to that effect. Without any testimony being taken in number 13, other than the affidavits annexed to the bill, the vice-chancellor decided that the loss sustained by Sarah Conway, by reason of the fire, was $20,192.90; that the complainant's share of this loss was $8,250.88, with interest, and that the balance due the complainant on its mortgage was the difference between these two amounts. He thus determined that Mrs. Conway, having received $11,532.32 from her judgment against the National Liberty Insurance Company, was entitled to receive from the automobile insurance company the difference between this amount and the total amount of her judgment against the National Liberty Insurance Company of $20,192.90 and so, in effect, gives a judgment at law against the automobile insurance company for the amount found by a jury in

another case against another company. This was done with no ruling by the court on the motion to dismiss Mrs. Conway's bill, with no answer filed by the defendant therein, no issue joined and no testimony taken. The defendant was entitled to be heard on all meritorious questions that might properly be raised therein, including the contractual limitation of the time within which suit must be brought on her policy, and the question as to the effect of the endorsement of ownership on the policy in the name of James F. Conway alone.

The decrees in each case should be reversed. In the foreclosure suit, number 12, because, after the counter-claim was struck out, there was no issue specifically raised or prosecuted under the answer justifying a decree for any lesser amount than the full amount claimed by the assignee of the mortgage. And in suit number 13—the suit to direct the surrender and cancellation of the bond and mortgage upon the payment of the amount due thereon, less the alleged *pro rata* share of the fire loss claimed to be due from the assignee of the bond and mortgage—because there was no issue framed and no testimony submitted to justify the decree; and further, because the question before the court below, as disclosed by the record, was one on the defendant's motion to dismiss, and not upon a hearing and determination of the bill.

The decrees of the court of chancery in these two cases are reversed.

*For affirmance*—None.

